Daraxa Lee **MATTICE, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. C–89–4061–FMS.

United States District Court, N.D. California.

July 2, 1990.

Thomas J. Brandi and Mylene L. Reuvekamp, Bianco, Brandi & Jones, San Francisco, Cal., for plaintiff.

Gail Killefer, San Francisco, Cal., for defendant.

## ORDER

FERN M. SMITH, District Judge.

Plaintiff brings this action under the Federal Torts Claims Act (FTCA), 28 U.S.C.

§§ 1346(b), 2671, *et al.*, for damages she sustained in December, 1987, when she drove a car through a redwood barrier on Enderts Beach Road at the Crescent Beach Overlook in Redwood National Park and plummeted 350 feet to the beach below.

Plaintiff alleges that the U.S. is liable for her injuries due to its negligent failure to provide adequate signs or other warning of the curve, and for failure to provide an adequate guardrail or barrier to prevent such a fall.

Defendant moves to dismiss the action for lack of subject matter jurisdiction, claiming that it has not waived sovereign immunity for the exercise or performance of a discretionary function on the part of a federal agency or employee. 28 U.S.C. § 2680(a). Defendant also moves for summary judgment on the ground that plaintiff's claim is barred by California's Recreational Use Statute, Cal.Civil Code § 846.

Having carefully reviewed all submitted materials, and heard counsel's argument on these issues, the Court hereby issues the following ORDER, granting both motions.

### FACTS

Prior to the accident, plaintiff (who was fourteen years old at the time) was with a group of teenagers at the picnic area near the crash site. There she met Alyosha Mattei, the registered owner of the car in question. Because Mattei had been drinking alcohol, plaintiff offered to drive his car for him. She apparently was not fully confident of her ability to do so, however, since she allegedly was taking a "test drive" on Enderts Road.

Defendant alleges that plaintiff was steering and working the clutch while Mattei shifted the gears. They approached the Crescent Beach Overlook at approximately 30 m.p.h. Rather than stepping on the brake to slow down, plaintiff apparently stepped on the clutch. She steered the car along the curve to the left and passed the overlook parking area when her vehicle drifted to the right and she struck the 4″ by 6″ redwood guardrail at a 45 degree angle. The car fell through the guardrail to the beach below.

### Sovereign Immunity

■ A party may bring a cause of action against the U.S. only to the extent the government has waived its sovereign immunity. The FTCA is a limited waiver of sovereign immunity, but it does not assure injured persons damages for all injuries caused by the U.S. The discretionary function exception, 28 U.S.C. § 2680(a), expressly excepts from the waiver of immunity:

Any claim ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

In *Berkovitz v. U.S.*, 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988), the Supreme Court outlined a two-prong test for determining whether the discretionary function exception bars a claim against the government. The key questions are (1) does the challenged conduct involve a permissible element of judgment or choice, and (2) is the discretion involved of the kind that the discretionary function exception was designed to shield. The first prong of this test is satisfied if the challenged conduct involved judgment or choice. The second prong will be satisfied if the discretion was based on social, political, or economic policy considerations.

■ In this case, it is undisputed that the decision whether or not to erect a guardrail or other barrier is wholly discretionary with the government. In *Bowman v. U.S.*, 820 F.2d 1393 (4th Cir.1987), a Fourth Circuit panel held that the government's decision not to place a guardrail or provide other warning near an embankment was "precisely ... [the] type of decision Congress intended to shield from liability ..." *Id.* at 1395. Further, the Court stated that "[t]hese decisions require balancing many factors: safety, aesthetics, environmental impact and available financial resources." *Id.*

The Ninth Circuit has also found that the decision of the National Park Service (NPS) to design and construct a park road without guardrails was "grounded in social and

political policy." *ARA Leisure Services v. U.S.*, 831 F.2d 193, 195 (9th Cir.1987).[1]

Plaintiff concedes that the decision whether or not to post warning signs or erect a guardrail was discretionary. She argues, however, that once the government chose to put a guardrail in place, it had a duty to construct the barrier in a non-negligent manner. The use of redwood for construction and the configuration of the barrier allegedly violates appropriate safety standards.

■ The NPS employees responsible for erecting the barrier claim that they had two reasons for doing so. First, they wanted to prevent people from intentionally pushing old or stolen cars over the cliff edge. Secondly, they wished to delineate a safe route for pedestrians walking along the cliff. In light of those two goals, they decided, for aesthetic reasons, to construct the barrier out of redwood. Defendant claims that such a decision clearly was within the discretion of the park employees and, therefore, falls within the FTCA exception. (NPS employees claim they saw no need for a sturdier barrier because there had never been an over-the-cliff accident or any kind of motor vehicle accident at the location in question.)[2]

Plaintiff argues that the discretionary function immunity does not apply in this case because the choice of redwood as a building material and the design of the guardrail were not decisions grounded in social, economic, or political policy. Given the cases holding that the choice whether to erect a barrier at all is grounded in those policies, and the NPS's alleged goals in installing the guardrail, plaintiff's argument is unpersuasive.

Plaintiff relies on the following cases, all of which are inapposite to or distinguishable from the case at hand:

*Alabama Electric Cooperative Inc. v. U.S.*, 769 F.2d 1523 (11th Cir.1985) held that not all design decisions are inherently grounded in social, economic and political policy; if professional standards or standards of general reasonableness can be consulted, then the decision is not discretionary. This case does not reflect the law of the Ninth Circuit, however.

*Arizona Maintenance Co. v. U.S.*, 864 F.2d 1497, 1501 (9th Cir.1989), involved a suit over both the government's decision to use dynamite for measuring soil subsidence and the execution of the blasting program (i.e., the amount of dynamite used). The Ninth Circuit found that the decision to use dynamite was a discretionary function. The choice of how much dynamite to use at the particular location, however, was "governed by objective standards." *Id.* at 1504.

The Ninth Circuit referred to *Arizona Maintenance* in *Kennewick Irrig. District v. U.S.*, 880 F.2d 1018 (9th Cir.1989). *Kennewick* held that decisions of the U.S. Bureau of Reclamation (Bureau) in designing the Kennewick canal involved engineering analysis *and* judgment as to the balancing of many technical, economic and social considerations. As such, design decisions involving the canal (although negligent) were protected under the discretionary function exception. The Court distinguished *Arizona Maintenance* on the ground that the challenged decision in that case—how much dynamite to use to achieve a certain effect—involved the simple application of objective scientific standards and did not involve the weighing of economic, political, or social policy considerations. 880 F.2d at 1030.

*Indian Towing Co. v. U.S.*, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955), referred to by plaintiff as a "landmark case," is

1. The *ARA* Court also found that NPS's failure to maintain the road in question in a safe condition was *not* a decision grounded in social, economic, or political policies. The Court allowed the claim against the government to proceed based on the NPS's failure to adhere to its own safety standards, which required that park roads conform to the original grades and alignments and that graded roads be firm and of uniform cross-section. In this case, plaintiff

does not allege the violation of specific, mandatory safety standards.

2. Plaintiff alleges that a metal guardrail and warning signs are now in place. This evidence is inadmissible to show negligence as well as irrelevant to the issue whether the decision to construct the barrier out of redwood was discretionary with the government.

nothing of the sort. The *Kennewick* Court closely analyzed this case and concluded that its holding did not rely on the discretionary function exception at all. Nevertheless, plaintiff relies on this case for the proposition that once the government undertakes a discretionary function, it must do so in a non-negligent manner.

In *Indian Towing,* the government was sued for negligent operation of a lighthouse. The Supreme Court stated: "The Coast Guard need not undertake the lighthouse service. But once it exercised its discretion to operate a lighthouse ... and engendered reliance on the guidance afforded by the light, it was obligated to use due care to make certain that the light was kept in good working order...." 350 U.S. at 69, 76 S.Ct. at 126–127. As noted above, the Ninth Circuit has recognized that *Indian Towing* did not involve the discretionary function exception. It also is important to note that, in this case, plaintiff could not reasonably argue that she in any way relied on the presence of the redwood guardrail.[3]

Plaintiff's expert submits a declaration stating that the redwood barrier failed to meet any of the established state or federal guidelines for roadside guardrails. Defendant does not dispute this fact. Instead, defendant argues that the decision involved in the instant case is far closer to the decisions involved in designing the Kennewick canal than the application of objective scientific standards at issue in *Arizona Maintenance:*

> [T]he only criteria for installing the barrier was aesthetics ... engineering was not a consideration in choosing a design or material.... The decision to install such a barrier and the decision, based upon aesthetics to use redwood are decisions involving social and economic considerations. Such decisions are shielded from tort liability.

Reply Memo at 4.

The Court concurs with defendant's argument. In addition, the Court notes that

all of the cases relied upon by plaintiff have one thing in common: in each of them, the government's exercise of a discretionary function gave rise to the harm. (In *Arizona Maintenance,* the harm resulted from the government's use of dynamite; in *ARA,* the negligently maintained road caused the car to topple over the embankment.) In this case, the guardrail did not proximately cause the accident. Although a sturdier barrier may have prevented the accident, the NPS had no duty to erect a barrier in the first place; the barrier that it did erect was in no way responsible for the harm. It makes little sense, therefore, to find that the government should have abided by any set construction standards instead of relying on the discretion of individual employees.

The key question in deciding this motion is whether this is the type of decision which Congress intended to shield from tort liability. *See Berkovitz v. U.S.,* 108 S.Ct. at 1954. For the reasons discussed above, this Court concludes that the decisions at issue here fall squarely within the discretionary function exception. Accordingly, defendants' Motion to Dismiss is GRANTED.

### California's Recreational Use Statute [4]

In the alternative, defendant moves for summary judgment based on application of the California Recreational Use Statute, Cal.Civil Code § 846. Section 846, in pertinent part, provides as follows:

> An owner of any estate or any other interest in real property, ... owes no duty of care to keep the premises safe for entry or use by others for any recreational purpose or to give any warning of hazardous conditions, uses of, structures, or activities on such premises to persons entering for such purposes....

The statute's definition of "recreational purpose" includes all, types of "vehicular riding" as well as "sightseeing" and viewing or enjoying "scenic sites."

---

**3.** Plaintiff also relies on the *ARA* case, *supra* note 2. As pointed out earlier, however, there is no allegation here that defendant violated an internal safety standard.

**4.** It is undisputed that the government's liability under the FTCA is to be determined according to the law of California.

Plaintiff argues that § 846 does not apply to her claims for three reasons: (1) the defendant is a public entity; (2) plaintiff was not engaged in recreational activity at the time of the accident; and (3) the government acted willfully. Each of these, if accurate, would state an exception to application of § 846.

■ The first of plaintiff's arguments is patently invalid. The United States, when sued under the FTCA, is entitled to invoke § 846 in its defense. *Simpson v. U.S.*, 652 F.2d 831 (9th Cir.1981); *Toomey v. U.S.*, 714 F.Supp. 426, 428 (E.D.Cal.1989) (although § 846 does not apply to property owned by California public entities, it does apply to property owned by the U.S. because under the FTCA "the federal government's liability is to be determined by the private person standard").

■ Plaintiff's second argument is similarly flawed. She claims that she was not engaged in recreational activity at the time of the accident but was, instead, leaving the park.[5] Plaintiff claims that the reference in § 846 to "vehicular riding" could not have been meant to apply to a situation such as this one where the road was being used to exit an area.

Judge Patel addressed precisely that argument in *Castagne v. U.S.*, No. C–87–5251–MHP:[6]

> Here, plaintiff was injured 10 or 15 minutes after leaving a beach within the GGNRA [Golden Gate National Recreation Area]. Clearly, plaintiff entered the GGNRA for a recreational purpose contemplated by the statute. Simply because plaintiff was transporting herself within the GGNRA on a road which provides access to non-recreational facilities does not abrogate the statute in this case. Whether entering or leaving the premises, the transportation was related to the recreational use of the property.

■ Finally, plaintiff in the instant case argues that defendant acted maliciously or willfully in failing to guard or warn against a dangerous condition. In *Morgan v. Southern Pacific Transportation Co.*, 37 Cal.App.3d 1006, 112 Cal.Rptr. 695 (1974), the California appellate court established the three elements essential for showing willful misconduct: (1) actual or constructive knowledge of the peril to be apprehended; (2) actual or constructive knowledge that injury is a probable, as opposed to possible, result of the danger; and (3) conscious failure to act to avoid the peril. There simply is no evidence in this case to meet that test. Accordingly, defendant's motion for summary judgment is GRANTED on the grounds that her claim is barred by the California Recreational Use Statute.

SO ORDERED.

---

**5.** This contention is somewhat difficult to believe given that at the time of the accident she was on her way *into* the park, travelling on a road that dead-ended at the scenic lookout area. Nevertheless, the Court accepts plaintiff's assertion as true.

**6.** The plaintiff in that case was injured when her motorcycle slid out of control in a paved tunnel, while she rode out of the recreation area.